

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable John R. Shook
Criminal District Attorney
Bexar County
San Antonio, Texas

Dear Sir:                    Opinion No. O-7090

Re:  Whether Sec. 10 of Art. 2351,
     V. A. C. S., or H. B. 240,
     Acts of 49th Legislature, pre-
     vents Bexar County from com-
     plying with the request of
     City-County Tuberculosis
     Control Board to pay to such
     board all funds collected
     under the terms of Sec. 6A,
     Art. 4437a, V. A. C. S., and
     on hand as of the close of
     business January 31, 1946.

We have your opinion request of recent date enclosing
copy of a letter from the City-County Tuberculosis Control
Board to the Bexar County Commissioners' Court, which letter
reads in part as follows:

"The following is an excerpt from the minutes
of the City-County Tuberculosis Control Board meet-
ing of January 26, 1946:

"'Resolved, that Bexar County be requested to
pay to the City-County Tuberculosis Control Board
for deposit to its account the sum of money col-
lected by the county for such purpose as of the
close of business January 31, 1946.'

"This resolution was adopted by unanimous vote
of the Board, and everything that the Commissioners'
Court can do to expedite the matter will be very
much appreciated."

You inquire as to whether Section 10 of Article 2351,
Vernon's Annotated Civil Statutes, or House Bill 240, Acts of
the 49th Legislature, prohibits compliance with the above
request of the board.

Hon. John R. Shook,   page 2

Article 2351, V. A. C. S., prescribes certain powers and duties of commissioners' courts. The pertinent parts read as follows:

"Each commissioners court shall:

"* * *

"10.  Audit and settle all accounts against the county and direct their payment.

"* * *

"15.  Said court shall have all such other powers and jurisdiction, and shall perform all such other duties, as are now or may hereafter be prescribed by law."

The City-County Tuberculosis Control Board is directed by Section 6A of Art. 4437a, V. A. C. S., to expend, in its discretion, the funds therein created to provide economic aid to indigent persons suffering from tuberculosis and dependent members of their immediate family. Is the commissioners' court required to audit and direct payment of each individual grant prior to any actual payment to the indigent tubercular?

Section 6A of Art. 4437a, which creates the City-County Tuberculosis Control Board, reads in part as follows:

"Sec. 6A. (a).  The governing bodies of the county, and of the city or cities within said county adopting the provisions hereof as herein provided, are hereby authorized to conduct a joint program of tuberculosis control within said city or cities and county, having for its object the protection of public health by the alleviation, suppression and prevention of the spread of tuberculosis. Such program may include cooperation with all public or private agencies, federal, state or local, having the same objective, and shall include providing economic aid in the discretion of the Board hereinafter created, under medical certification as hereinafter provided, to indigents suffering from tuberculosis and to dependent members of their immediate family as a part of the total treatment of and as an aid in the prevention of the spread of the disease, for the protection of the public health.

las. John R. Shook, page 3

"(b). The County Commissioners Court is hereby authorized to levy a direct annual tax of not to exceed 10¢ on the $100.00 valuation, which shall be in addition to the tax authorized by Section 3 herein, and the funds produced thereby shall be kept separate from other funds and shall be used solely for the purposes set forth in this section; provided that such levy of taxes shall be first submitted to the qualified taxpaying voters of the county and a majority vote shall be necessary to levy the tax. The governing body of the city or cities acting hereunder shall likewise be authorized to levy a direct tax of not to exceed 5¢ on the $100.00 valuation to provide funds to be used for the same purpose, . . .

"(c). For the purpose of administration of this section, in the event such county and city or cities engage in such program and vote such special taxes, such city or cities and county shall have power to create a City-County Tuberculosis Control Board, to be composed of five or more members, . . .

"* * *

"(e). The Board shall have power to carry out the terms of this section in order to alleviate, suppress and prevent the spread of tuberculosis within the county, as a public health function, subject to the provisions hereof. The funds derived from the special taxes herein authorized shall be combined together by joint action of the county and city or cities and be expended by or under the direction of such Board subject to the limitations herein; provided that such funds shall be expended to provide necessary economic aid to indigent persons suffering from tuberculosis and dependent members of their immediate family, upon certification in each case to the Board by the city or county health officer, to the effect that the persons receiving such aid are indigents, and that they are bona fide residents of the county and have been for more than six months; and such funds may also be expended to provide for administration expenses hereunder, including case investigation and necessary equipment and services, but for no other purposes.

"(f). The Board shall make quarterly reports to the governing boards of the county and city or cities

Hon. John R. Shook,   page 4

acting hereunder, stating the condition of the fund
and expenditures made therefrom, and the services
performed; and the county, and city or cities partici-
pating, shall have the right to examine and audit the
books and records of said Board."   (underscoring ours)

We note that the tuberculosis fund provided for is to be
kept separate from other funds of the county, but is to be
combined with the funds provided by the city and then expended
by the Board subject to the limitations of the section.  It is
significant that the fund is first to be combined with the city
fund and then expended under direction of the Board, and the
Board, not the court, is vested with discretion as to the
economic aid to be extended.

We have found no authority holding that a grant to an
indigent tubercular, such as here provided for, is an "account
against the county" within the meaning of Sec. 10 of Art. 2351,
but even if it were, which we do not decide, it is our opinion
that Sec. 6A of Art. 4437a, the more recent statute, does not
contemplate that the commissioners' court shall audit and direct
payment in advance of each individual grant to an indigent tuber-
cular.

A contrary interpretation would require a great amount of
detailed work on the part of the commissioners' court and would,
in effect, have it perform again a large part of the duties
placed by statute on the Tuberculosis Control Board.  The court
can satisfy itself, through the quarterly report of the Board
and through its right to examine and audit the books and records
of the Board, that the funds are, or are not, being expended in
accordance with the law.

Article 5, Section 18 of the Texas Constitution reads in
part that the commissioners' court "shall exercise such powers
and jurisdiction over all county business as is conferred by
this constitution and the laws of this state, or as may be
hereafter prescribed."  We note that our Supreme Court has
said in Clark v. Finley, 45 S. W. 343, with reference to this
provision that:

"Besides, under the provision quoted, the power
of the commissioners' court extends only to such
business as is intrusted to it by the constitution
and to such as the legislature may confide to it.
The provision does not inhibit the legislature from
committing a matter of county business to some other
agency."

Hon. John R. Shook,   page 5


House Bill 240 of the 49th Legislature provides a budget system for counties having a population in excess of 225,000 as shown by the last preceding or any future United States census and is applicable to Bexar County.   Your letter quotes there-from the following parts:

"'The County Auditor . . . on or immediately after January 1st of each year, he shall prepare a budget to cover all of the proposed expenditures of the county government for the current fiscal and calendar year . . . and no expenditures of the funds of the county shall thereafter be made except in strict compliance with said budget.'

"* * *

"'Upon the adoption of any general or special budget as hereinbefore provided and its certification, the County Auditor of each county thereupon shall open an appropriation account for each main budgeted or special item therein, and it shall be his duty to charge all purchase orders or requisitions, con-tracts, and salary and labor allowances to said appropriations.'

"* * *

"'The County Auditor shall make to the Commis-sioners' Court not less than monthly a complete report showing the financial condition of the county . . . the report shall contain a complete statement of the balances on hand at the beginning and close of the month, and the aggregate receipts to, and aggregate disbursements from, each fund. . .'"

The County Auditor of Bexar County has advised us that the expected income from the tax authorized in Sec. 6A of Art. 4437a is included in the county budget and an appropriation account therefor is set up.

Again, Sec. 6A of Art. 4437a is the more recent expression of legislative intent and, if in conflict with House Bill 240, which we do not decide, would control.

It is our opinion that the Commissioners' Court may lawfully order the payment of such funds to the City-County Tuberculosis Control Board in accordance with the Board's request and that H. B. 240 of the 49th Legislature does not prevent the County Auditor from lawfully charging the payment as a disbursement under the appropriation account set up.

Yours very truly,

ATTORNEY GENERAL OF TEXAS

By　Donald Gay
　　　Donald Gay
　　　Assistant

DG:LJ